952 F.2d 403
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John B. TRENTHAM, Plaintiff-Appellant,
v.
K-MART CORPORATION, Defendant-Appellee.
 No. 91-5654.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1992.
 
 Before KENNEDY and BOGGS, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiff appeals the grant of summary judgment against his claims of age discrimination and retaliatory discharge. For the reasons that follow, we AFFIRM the judgment of the District Court.
 
 I.
 
 2
 Plaintiff John B. Trentham worked as a loss prevention manager for defendant K-Mart at its Clinton Highway store in Knoxville, Tennessee. His principal duties entailed minimizing K-Mart's losses due to shoplifting, pilferage and the like. In September 1988, plaintiff suffered some sort of heart trouble while at work. He eventually sought treatment, and was diagnosed as having suffered a collapsed artery. Plaintiff made a claim to his employer for payment of his medical expenses and lost income. K-Mart was fully self-insured, but contracted out the administration of its health insurance plan to Blue Cross/Blue Shield of Michigan, and its disability plan to a division of Aetna.
 
 
 3
 At the time plaintiff's treating physician, his family doctor, responded "no" to the question on the disability coverage forms submitted by plaintiff as to whether the condition was work related. This issue is relevant, however, only insofar as it contributed to the confusion of the plaintiff, the treating hospitals and physicians, and the various insurance plan administrators as to the proper handling of plaintiff's expenses and claims. The defendant advised plaintiff that it was not a work-related injury, or should not be treated as one.
 
 
 4
 Apparently, due to the confusion as to responsibility, for some period some of the plaintiff's bills were left unpaid, and various creditors began dunning him. At that point, plaintiff sought redress from the defendant, asking the individuals involved to intervene to provide the coverage to which he thought himself entitled. Ultimately, the billing and payment difficulties were resolved, but only after plaintiff had stated to defendant that he would sue the company and the insurance administrators, or file a workers compensation claim, if necessary, to get his bills paid. Plaintiff has presented no evidence, however, controverting defendant's assertion that no one at K-Mart had any role in determining what claims to cover.
 
 
 5
 After these events, according to plaintiff, the attitudes of his supervisors markedly deteriorated. As indicative of the change, plaintiff points to the fact that he was instructed to do the manual labor involved in remodeling a room used to interrogate suspected shoplifters, rather than have outside contractors do the work, as had been done previously. Further, plaintiff has alleged that the loss prevention manager for the district in which plaintiff's store was located began to speak disparagingly to him concerning his age and job capabilities. Specifically, he alleges that the manager told him "John, you're too old ... to chase shoplifters," and that he should accept a transfer to the home improvement department. The plaintiff stated in his EEOC and Tennessee Human Rights Commission complaints that the same manager had also said that "they are going to be replacing security personnel with younger guys with college educations that don't mind doing paper work and audits."
 
 
 6
 Several months after all of this occurred, the termination at issue in this lawsuit occurred. Plaintiff's job duties included assisting in the destruction of damaged or returned merchandise that K-Mart did not need to send back to the manufacturer. If the goods were not destroyed, scavengers would retrieve the items from the trash and return them to K-Mart for a fraudulent credit. K-Mart therefore had several strict policies relating to the handling of such items.
 
 
 7
 On March 23, 1989, plaintiff saw several infant car seats near a loading dock. Plaintiff and another individual examined the seats, concluded they were damaged, and inquired of a woman with some responsibilities relating to returned goods whether the car seats were to be discarded. She responded that she did not have authority over them, but also stated that, in her opinion, if they were by the dock, they should be discarded. Plaintiff allegedly attempted to place them in the dumpster, but, upon finding it full, determined to take them home and sell them at a garage sale. Plaintiff later determined that they were not salable, and discarded them. There is some dispute as to the condition of the seats, however, because the manager responsible for them stated that although K-Mart does not normally discount and sell damaged items, they intended to do so with the seats in light of their relatively good condition.
 
 
 8
 Upon learning of plaintiff's actions with respect to the car seats, the store manager called plaintiff to a meeting, ascertained the facts, and concluded that he had no choice but to terminate plaintiff. The store manager and the loss prevention district manager informed plaintiff of the decision some time later, and specifically stated that it was based upon his violation of the loss prevention policies. Plaintiff does not dispute that he violated company policies relating to the destruction of returned goods and removal of merchandise, but contends that he thought he had whatever approval was necessary, that his supervisors had acquiesced in similar conduct on other occasions, and that historically the policies had not been rigidly enforced. Nevertheless, plaintiff's store manager felt he had no choice but to terminate plaintiff, particularly in light of his violating the very policies he was in charge of enforcing.
 
 
 9
 Upon plaintiff's termination, the loss prevention department at the Clinton Highway K-Mart was left with one employee, a forty-four year-old woman who had served under the plaintiff. K-Mart sought job applicants for the vacancy by means of newspaper advertisements. The ads listed an opening for a "security manager," and Charles McKeans, a thirty-two year-old, applied for and received the job. There is some confusion in McKeans' file whether he was employed as a "loss prevention manager," or was merely in training for that supervisory position. All of the individuals involved, including McKeans, however, testified that he was not a "loss prevention manager," but was merely a loss prevention employee. After a trial period, the forty-four year-old holdover employee in the department was promoted to the loss prevention manager position, with supervisory responsibility over McKeans.
 
 
 10
 Plaintiff has now filed this action alleging that his termination constituted age discrimination in violation of the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., ("ADEA") and the Tennessee Human Rights Act, T.C.A. § 4-21-101 et seq., or in the alternative was in retaliation for his threatening to file a worker's compensation claim. The District Court granted summary judgment for defendant on both claims, and plaintiff now appeals. We review a grant of summary judgment de novo. EEOC v. Univ. of Detroit, 904 F.2d 331, 334 (6th Cir.1990).
 
 II.
 A. Age Discrimination
 
 11
 Under Federal Rules of Civil Procedure 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The standard for granting summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). There is no issue for trial unless, viewing the evidence in the light most favorable to the non-moving party, there is sufficient evidence favoring that party for a jury to return a verdict in its favor. Anderson, 477 U.S. at 249. Once the moving party submits evidence sufficient to support a motion for summary judgment, "the non-moving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Gregg v. Allen-Bradley Co., 801 F.2d 859, 861 (6th Cir.1986).
 
 
 12
 In the instant case, plaintiff has failed to establish a necessary element of his claim, that he was replaced by a younger person. Plaintiff has conceded that he was not discriminated against on the basis of age if in fact he was not replaced by someone younger than himself. Plaintiff has failed to present sufficient evidence to permit a jury to find for him on this issue. In fact, a woman older than plaintiff was promoted to loss prevention manager. A younger man was hired to work under her. All involved parties, including the new hire, testified that it was their understanding that he was subordinate to the newly promoted forty-four year-old loss prevention manager. In the face of these uncontroverted affidavits, plaintiff must produce much more than a simple naked allegation that the younger man replaced him and the fact that the job opportunity was presented as a "security manager" position. On the evidence submitted, no jury could properly find that he was replaced by a younger employee. Therefore, he has failed to establish a prima facie claim of age discrimination.
 
 
 13
 Plaintiff has also failed to introduce direct evidence sufficient to support a finding of an intent to discriminate on the basis of age. Although plaintiff has testified to statements made to him by the loss prevention district manager that are indicative of age bias, that individual did not make the termination decision. Plaintiff himself has testified that his immediate superior was the store manager. That individual has testified that he alone made the decision to terminate plaintiff, and that it was predicated solely on the policy violation. The mere presence of another individual who several months earlier allegedly made statements indicative of age bias is insufficient to permit a jury to find a direct case of age discrimination. Plaintiff's cause of action under the ADEA and the Tennessee Human Rights Act therefore fails.
 
 B. Retaliation Claim
 
 14
 Plaintiff has alleged in the alternative that his termination was in retaliation for his having threatened to file a worker's compensation claim if it proved necessary for him to receive coverage for his expenses arising out of his collapsed artery. In support of this cause, he testified that K-Mart personnel department employees had previously made it known to him that worker's compensation claims were looked upon with disfavor, that he should not submit a claim, and that the attitudes of his superiors changed dramatically in response to his threatening that he would, in fact, file a claim if his medical bills were not paid by the company insurance plans. The change in his treatment at work allegedly culminated in his wrongful, pretextual termination.
 
 
 15
 Taking plaintiff's evidence at its strongest, we find that he has failed to present sufficient evidence to support a jury finding in his favor. Plaintiff has produced almost no substantive or substantial evidence linking his termination, which can be shown to rest on completely neutral and valid reasons, with the alleged disfavor he claims to have invited by merely threatening to file a suit to recover funds that the company did not dispute it owed him. Absent some more substantial showing of a hostile reaction to threats of worker's compensation claims, plaintiff cannot escape the clear conclusion established by the defendant's evidence that it terminated him for violation of the loss prevention policies he was responsible for enforcing. Since causation is an element of his claim under Tennessee law, Johnson v. St. Francis Hospital, 759 S.W.2d 925, 928 (Tenn.App.1988), this claim also fails.
 
 III.
 
 16
 For the foregoing reasons, we AFFIRM the judgment of the District Court awarding summary judgment to defendant.